UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CITY OF SOUTHFIELD GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Civil Action No. 1:23-cv-00425-VMC |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | JURY TRIAL DEMANDED |
| vs. | ) ) | |
| NATIONAL VISION HOLDINGS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**PLAINTIFFS' MOTION FOR RECONSIDERATION AND
INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .........................................................................1

II.   BACKGROUND ...........................................................................................2

III.  LEGAL STANDARDS ..................................................................................3

IV.   ARGUMENT.................................................................................................6

      A.    The Court Erred by Finding the Complaint Failed to Plead
           Falsity with Particularity .......................................................................6

      B.    The Court Erred by Finding the Complaint Failed to Plead a
           Strong Inference of Scienter.................................................................17

V.    CONCLUSION............................................................................................19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................5

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
2010 WL 3545389 (N.D. Ga. Sept. 10, 2010)............................................13, 14

*Bryan v. Murphy*,
246 F. Supp. 2d 1256 (N.D. Ga. 2003)....................................................4

*Carder v. Graco Children's Prod., Inc.*,
2021 WL 9721143 (N.D. Ga. Nov. 18, 2021) ......................................4

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ..............................................................5

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) .........................................................5, 7

*In re BellSouth Corp. Sec. Litig.*,
355 F. Supp. 2d 1350 (N.D. Ga. 2005)..............................................15

*In re Flowers Foods, Inc. Sec. Litig.*,
2018 WL 1558558 (M.D. Ga. Mar. 23, 2018).........................6, 16, 18

*In re Paincare Holdings Sec. Litig.*,
541 F. Supp. 2d 1283 (M.D. Fla. 2008)..................................12, 16, 17

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
239 F. Supp. 2d 1351 (N.D. Ga. 2002), *aff'd sub nom. Phillips v. Sci.-Atlanta*,
374 F.3d 1015 (11th Cir. 2004) ...........................................................15

*In re Towne Servs., Inc. Sec. Litig.*,
184 F. Supp. 2d 1308 (N.D. Ga. 2001)................................................12

*In re Upstart Holdings Sec. Litig.*,
2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ...................................17

**Page**

*Lemen v. Redwire Corp.*,
    2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) ...................................................16

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) .............................................................................12

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ...........................................................................5

*Nisson v. Lundy*,
    975 F.2d 802 (11th Cir. 1992) (per curiam) ........................................................4

*Phillips v. Sci.-Atlanta, Inc.*,
    374 F.3d 1015 (11th Cir. 2004) ..............................................................6, 15, 17

*Phoenix Ins. Co., Ltd. v. ATI Physical Therapy, Inc.*,
    2023 WL 5748359 (N.D. Ill. Sept. 6, 2023) ......................................................16

*Pritchard v. Apyx Med. Corp.*,
    2020 WL 1180731 (M.D. Fla. Mar. 11, 2020) .................................................4, 5

*Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
    564 F. Supp. 3d 1272 (N.D. Ga. 2012) .................................................16, 18, 19

*Monroe Cnty. Emps.' Ret. Sys. v. Southern Co*,
    2018 WL 1558577 (N.D. Ga. Mar. 29, 2018) ...................................................18

*Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*,
    333 F. Supp. 3d 1315 (N.D. Ga. 2018).........................................................16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................5, 6, 12, 17

**Page**

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 9(b) ................................................................................................5
    Rule 12(b)(6)..........................................................................................4
    Rule 59(e)...........................................................................................1, 4
    Rule 60(b) ..........................................................................................1, 4
    Rule 60(b)(6).........................................................................................4

NDGa. Local Rules
    Rule 7.2(E) ........................................................................................1, 3

Lead Plaintiffs City of Southfield General Employees' Retirement System ("Southfield") and International Union of Operating Engineers, Local No. 793, Members Pension Benefit Trust of Ontario ("Operating Engineers") (collectively, "Lead Plaintiffs") and Plaintiff Howard County Master Trust (collectively, Plaintiffs"), pursuant to Local Rule 7.2(E), Rule 59(e), and Rule 60(b) of the Federal Rules of Civil Procedure, respectfully submit this motion and incorporated memorandum of law for reconsideration of the Court's March 30, 2024 Order (ECF 63) ("Order") granting Defendants' motion to dismiss (ECF 53) and dismissing this action with prejudice.

## I.     PRELIMINARY STATEMENT

This motion for reconsideration should be granted to correct clear legal error. The Court's holding that Plaintiffs' Amended Complaint for Violations of the Federal Securities Laws (ECF 46) ("Complaint")[1] failed to adequately plead with particularity **any** facts demonstrating that Defendants' statements were false or misleading and that Defendants acted with scienter was clearly erroneous because the Court failed to accept Plaintiffs' facts as true and to draw all reasonable inferences therefrom in Plaintiffs' favor as the United States Supreme Court requires. The Court misconstrued legal precedent governing falsity, and applied inferences in Defendants' favor to discount Plaintiffs' robust allegations and the

---

[1]   Citations to "¶__" refer to paragraphs in the Complaint.

market's reaction to Defendants' partial disclosures.  As to scienter, the Court erroneously failed to credit the Complaint's detailed inferences of Defendants' knowledge and severe recklessness when making false statements.  When Plaintiffs' factual allegations are viewed as true and collectively, and all reasonable inferences are construed in Plaintiffs' favor, the Complaint adequately pleads with particularity the falsity of Defendants' false statements and omissions.  Similarly, when so viewed the inferences of scienter are at least as compelling as any opposing inference.  Accordingly, Plaintiffs respectfully request that the Court reconsider and vacate its Order dismissing the Complaint with prejudice.

## II.    BACKGROUND

This securities fraud class action seeks damages resulting from Defendants' false or misleading statements and omissions during the May 13, 2021 to February 28, 2023 Class Period regarding National Vision Holdings, Inc.'s ("NV" or the "Company") lack of critical doctors and support staff required to see customers needing eye exams and eye glasses.  ¶¶2-13.  As a value centered optical retailer, NV's performance is directly linked to how many eye exams its optometrists and staff perform.  *Id*.  The Complaint alleges that Defendants knowingly, or with severe recklessness, made material false or misleading statements and omissions regarding several interrelated topics that all negatively impacted NV's financial results and outlook: (i) significant wage investments; (ii) doctor retention rates; (iii) ability to

perform eye exams (exam capacity); (iv) remote medicine; (v) the Company's sustainable growth and business operations post-pandemic; and (vi) 2022 guidance. *See, e.g.*, ¶¶101-230.  Defendants' misrepresentations and omissions artificially inflated the price of NV stock during the Class Period, and the relevant truth was revealed through three partial disclosures. *See, e.g.*, ¶¶82-100, 280-294.  In response to each disclosure, NV's stock price declined sharply, evidence that investors and analysts alike were stunned by Defendants' disclosures.  ¶¶138-139, 182-185, 226-230.

Lead Plaintiffs filed the Complaint on June 30, 2023.  ECF 46.  Plaintiffs supplemented the Complaint on August 10, 2023, adding Howard County Master Trust as a named plaintiff.  ECF 51.  After detailed briefing on Defendants' motion to dismiss (ECFs 53, 55-56) counsel for the parties appeared before the Court on January 18, 2024, for oral argument.  ECF 62.  In its first ruling on the sufficiency of the Complaint's allegations, on March 30, 2024, the Court entered the Order dismissing the case with prejudice.  ECF 63.  The bulk of the Court's Order focused on whether the Complaint alleged, with sufficient particularity, that Defendants made actionable false statements or omissions.

## III.  LEGAL STANDARDS

Local Rule 7.2(E) authorizes motions for reconsideration "within 28 days of entry of the order or judgment."  When applying the Local Rule, courts in this

District often look to Fed. R. Civ. P. 60(b), which permits a party to move for relief from "a final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief."[2]   Rule 59(e), meanwhile, permits a party to file "[a] motion to alter or amend a judgment . . . no later than 28 days after entry of the judgment." Fed. R. Civ. P 59(e).  Courts have distilled three major grounds justifying reconsideration: "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Carder v. Graco Children's Prod., Inc.*, 2021 WL 9721143, at *1 (N.D. Ga. Nov. 18, 2021) (granting motion for reconsideration) (citing *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003)).  "[T]he decision to grant or deny a motion for reconsideration is ultimately left to the discretion of the district court." *Id.* at *2.

Pursuant to Fed. R. Civ. P. 12(b)(6), the standard to deny a motion to dismiss is not whether a plaintiff will ultimately prevail, but whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Pritchard v. Apyx Med. Corp.,* 2020 WL 1180731, at *3 (M.D. Fla.

---

[2]   Courts give Rule 60(b) "a liberal and remedial construction," and treat Rule 60(b)(6) as a "catch-all provision, and a grand reservoir of equitable power to do justice in a particular case." *Nisson v. Lundy*, 975 F.2d 802, 806-07 (11th Cir. 1992) (per curiam).  Internal quotation marks citations are omitted and emphasis is added unless otherwise noted.

Mar. 11, 2020) (denying motion to dismiss) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Securities fraud claims, like those here, fall under the purview of Fed. R. Civ. P. 9(b) and must also "state, with particularity the circumstances constituting fraud." *Id.* (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). Under Rule 10b-5, Defendants are prohibited from making not only false statements, but also from "omit[ting] to state a material fact necessary, in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 n.14 (11th Cir. 2011). "The disclosure required by the securities laws is measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead prospective buyers." *Id.* at 1305 (cleaned up). A complaint sufficiently pleads falsity with particularity by specifying "the who, what, when[,] where, and how" of statements made. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

To plead scienter with particularity, plaintiffs must establish a "strong inference" of scienter, which the Supreme Court summarized as: "[w]hen the [scienter] allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007). To that end, "facts which individually do not give rise to a strong inference of scienter may be

aggregated to rise to the necessary showing." *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *12, *18 (M.D. Ga. Mar. 23, 2018) (denying motion to dismiss on scienter grounds) (citing *Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1016-17 (11th Cir. 2004)). "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences[.]" *Tellabs*, 551 U.S. at 324. Importantly, at the motion to dismiss stage, the Court must consider the Complaint in its entirety, "accept all [Plaintiffs'] factual allegations . . . as true," and construe all reasonable inferences in Plaintiffs' favor. *Id.* at 309-10, 322.

## IV. ARGUMENT

Based on the foregoing standards, the Court should reconsider the Order because it committed error by failing both to accept Plaintiffs' well-pled facts as true and to draw all reasonable inferences therefrom in Plaintiffs' favor when evaluating the falsity and scienter prongs of Plaintiffs' securities fraud claims.

### A. The Court Erred by Finding the Complaint Failed to Plead Falsity with Particularity

When Plaintiffs' allegations are viewed in their entirety, the Complaint pleads particularized facts establishing that the challenged statements and omissions were false or misleading when made. *Tellabs*, 551 U.S. at 309-10, 322. The Court should reconsider its falsity finding for the following ***four*** specific reasons.

*First*, finding Plaintiffs' allegations to be "conclusory" and that "Plaintiffs fail[ed] to put forth *any* facts that explain *how* any of the challenged statements were false and misleading" (ECF 63 at 16), the Court failed to credit Plaintiffs' detailed facts demonstrating the falsity of Defendants' statements when made, misconstrued Plaintiffs' allegations, and erroneously accepted Defendants' view of the Complaint. But, the Complaint sufficiently detailed the time, place, speaker, content of each false statement and omission, and why each statement was materially false and misleading when made. *Garfield*, 466 F. 3d at 1262; *see* ECF 55 at 6-14.

Indeed, Plaintiffs provided more than 70 paragraphs of factual information detailing significant increases in critical doctor attrition, and a timeline of the associated costs, and technical issues stemming from NV's remote medicine initiative. ¶¶27-100. Overlooking these facts, the Order pointed to 11 paragraphs from the summary "Nature of the Action" section of the Complaint as its "Facts." *Compare* ECF 63, at 3-7 *with* ECF 46, at 13-40. The Complaint provides much more than summary allegations.

As to Plaintiffs' wage inflation and retention allegations, the Court incorrectly credited Defendants' narrative, finding that NV "repeatedly informed investors that it was experiencing wage inflation and retention pressures . . . and Plaintiffs fail to plead with specificity how Defendants' statements were false and misleading." *Compare* ECF 55 at 8-11 *with* Order at 17-30. But, Plaintiffs do not allege

Defendants never "publicly discussed wage and compensation pressures." Order at 22. Instead, Plaintiffs allege that Defendants misled investors because their discussion downplayed such pressures and distinguished NV from its competitors when, in reality, Defendants had a duty to disclose that wage and compensation pressures were extreme and negatively impacting the Company's performance. ¶¶39-81, 83, 85-87.

Next, Plaintiffs did allege specific facts that NV suffered from labor shortages, exam capacity constraints, and lost sales, leading up to and during the Class Period. When taken as true, these allegations sufficiently support the false and misleading nature of Defendants' wage and retention statements when made:

- As of 2020, the Company's optometrist retention rates was only 40%-60%, with optometrists consistently burning out and leaving within two years of employment. ¶43. Defendants falsely touted retention rates as high as 80%-90%, but subsequently acknowledged in March 2023 problems with retention throughout the Class period. ¶219.

- In 2021, about eleven months after NV's stores reopened following the pandemic, doctors were retiring or leaving NV at record rates causing month-long exam appointment delays, lost sales, and reduced profitability. ¶¶49, 51.

- To alleviate exam capacity constraints and recruit more doctors, in the third and fourth quarter of 2020, Defendants hired seven doctor recruiters with a salary of $150,000 each. In the first quarter of 2021 the Company created seven regional clinical director positions to serve as liaisons between doctors and Company's professional services director to assist with recruitment and retention with a salary of $200,000. ¶52.

- Leading up to and during the Class Period, NV's labor shortage was so bad that stores operated illegally in "show-mode" without licensed opticians. ¶¶45-46, 72.

The Court erred in failing to view these allegations in Plaintiffs' favor. Instead, the Court disagreed with Plaintiffs' characterization of Defendants' statements, rejecting, for example, that Fahs "deflected" when asked about "significant wage pressures." Order at 18-19. But whether he deflected or not should not be outcome determinative – what matters is that the statements made were misleading because they failed to disclose that NV was reeling from an extreme failure to retain doctors and staff, leaving NV unable to perform its most basic function: seeing patients. These well-pled facts were not disclosed by Defendants.

The Order further failed to credit facts supporting the false and misleading nature of Defendants' remote medicine statements, finding Plaintiffs "fail[] to plausibly plead that the remote medicine initiatives were, in fact, too ineffective and undeveloped to succeed," or provide "examples of those technical issues" or "details of its costs." Order at 30-37. The Court overlooked that the Complaint provided eight paragraphs detailing the timeline of remote medicine's failures, estimated costs, and specific technology and logistical problems (¶¶55-62), that when taken as true, demonstrate falsity because remote medicine was not capable of alleviating NV's doctor shortage. The Complaint alleged that:

- Between 2019 and early 2021, NV's DigitalOptometrics program cost stores $300,000 to implement; had internet

bandwidth issues causing up to 40 minute delays for doctors to connect with a patient; patients with severe eye issues such as glaucoma or cataracts could not be seen remotely; and the technology was only introduced in a minimal number of stores on the east coast where there were limited doctors available. ¶¶57-59.

- In early 2021, NV's RDX Technology ("RDX") program was implemented in America's Best stores but did not have enough doctors to operate the program and the technology failed. For example, hand-held sit-lamps used during the appointment quickly lost their charge and took hours to recharge preventing the appointments to continue. ¶¶60-61.

- By March 1, 2023, RDX was only in 1/3 of America's Best locations and Defendants acknowledged they needed to dedicate significant investment to "minimize" previously undisclosed "productivity loss" in the Company's remote medicine program. ¶¶62, 218.

Finally, the Order disregarded Plaintiffs' specific facts supporting the falsity of Defendants' material misstatements about NV's post-pandemic operations and ability to sustain growth. *See, e.g.*, ¶¶101, 103, 134. The Complaint identifies specific calls, internal reports, and meetings that Defendants or their direct reports attended, and positions created to counter significant recruiting, retention, and capacity problems prior to and during the Class Period. ¶¶63-72, 260. It further details how NV's business model was rooted in a "churn and burn" method where NV's doctors faced more demanding and less flexible schedules than the competition. ¶¶41-43. Nevertheless, the Court found the Complaint "fails to plead particularized facts the demonstrate why profitability was unsustainable or how

National Vision's labor crisis and exam capacity constraints were allegedly different from what they disclosed to investors."  Order at 37.[3]  But, when the facts alleged above are taken as true, they demonstrate that NV *was* experiencing a labor crisis and exam capacity constraints, at the time of Defendants' misstatements, making profitability unsustainable.  ¶¶63-81.

Similarly, the Order discredits Plaintiffs' well pled facts alleging that Defendants' statements relating to the Company's 2022 guidance were false or misleading when made stating, "it is unclear" what about these statements is "purportedly false or misleading."  Order at 23.  However, at the time the 2022 guidance was given, and then updated, Defendants had two months of 1Q22 and then five months of 2022 financial data and numerous reports (¶¶65-70, 260), which confirmed severe optometrist shortages and exam capacity constraints, making it impossible to meet demand, resulting in lost business (¶86), and rendering the guidance materially misleading and unattainable.  When these facts are taken as true and viewed in a light most favorable to Plaintiffs, they also support a finding of the falsity of these statements when made.

---

[3]  The Order holds that Plaintiffs simply "criticize Defendants for their inaccurate predictions regarding the COVID-19 pandemic[.]"  Order at 38-39.  Not so. Plaintiffs allege NV's *post*-pandemic operations (beginning over a year after the pandemic began, and 11 months after stores reopened) suffered from known problems that Defendants failed to accurately disclose.  That is a far different scenario than failing to predict the pandemic's consequences.  ¶49.

***Second***, the Court committed legal error finding that "Plaintiffs cannot rely on an after-the-fact statement made in November 2021" to "infer that [earlier statements] were false or misleading at the time they were made."  Order at 21-22. The law is clear that "an existing problem at the time [of] the [misstatement] renders the no-hindsight cases inapplicable."  *In re Towne Servs., Inc. Sec. Litig.*, 184 F. Supp. 2d 1308, 1322 (N.D. Ga. 2001);[4] *see also In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1291 n.7 (M.D. Fla. 2008) (where defendants "knew that the statements were false and misleading when made" allegations do not amount to "fraud by hindsight").  Plaintiffs – and courts – are permitted to rely on after-the-fact disclosures to support falsity at the time the underlying statements were made. *See Tellabs*, 551 U.S. at 309-10, 322; *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009) (reliance on post-class period facts "does not amount to fraud by hindsight").

Plaintiffs alleged that Moore's November 10, 2021 statement was an admission regarding material wage investments that Defendants knew happened

---

[4]  The Order distinguishes *Towne* by asserting that unlike here, the plaintiff adequately alleged that a disruption of services occurred.  But, the Court overlooked that the *Towne* Court correctly recognized that "[g]ranting the defendants' motion to dismiss on this ground would require the court to resolve factual issues in the defendants' favor in a manner improper on a motion to dismiss."  *Id*. at 1323; *see also* Order at 36.  Here, the Court erred by discounting these admissions and viewing Plaintiffs' allegations in the light most favorable to Defendants.  *Id*.

"*around mid-year [2021]*" (*i.e.*, May, June, or July 2021), and that Defendants knew would negatively impact fourth quarter profitability (¶¶132, 138). But, Defendants' previous statements in May and August 2021 gave the materially false impression that to the extent NV made any wage investments, they were standard or "modest," and would not negatively impact the Company. *See, e.g.*, ¶¶119-120 (NV was experiencing "*some* degree of *modest* wage inflation for our doctors" and that such wage inflation "has been moderated a bit across the last year").[5]

This action is distinguishable from *Belmont Holdings Corp. v. SunTrust Banks, Inc*., 2010 WL 3545389, *1-2 (N.D. Ga. Sept. 10, 2010). *See* Order at 21-22. In *Belmont*, the plaintiff alleged defendants underestimated SunTrust's allowance for loan and lease loss reserves. 2010 WL 3545389, at *1. As a result, the case turned on "[w]hether SunTrust had adequate reserves for its predicted loan losses," which the court found was generally "not a matter of objective fact, but rather a statement of SunTrust's opinion regarding what portion of its loan portfolio would be uncollectable." *Id.* at *6. Because the plaintiff there "specifically

---

[5]   The Court likewise erred by failing to credit Defendants' March 2023 admission that optometrist availability and exam capacity challenges started with the "pandemic," (in 2019) as support for the falsity of Defendants' Class Period statements (made in mid-2021 through 2022) that, for example, "we're still near record highs on retention" and "impact to us on staffing challenges is relatively mild." ¶118. *See also* ECF 55 at 8.

disavow[ed]" that "SunTrust did not believe the opinions and judgments it stated . . . with respect to its . . . loan loss provision," the court dismissed the complaint. *Id.*

Here, by contrast, Plaintiff does not allege Defendants never disclosed wage investment (Order at 22-23) rather, Plaintiff alleges Defendants mischaracterized the magnitude of the wage investments the Company actually made.  At first, Defendants described them as "modest."  But later, Defendants described those same wage investments as significant enough to negatively impact the Company's entire financial performance.  ¶¶104, 106, 117, 119.  This case, therefore, does not involve a "backwards looking assessment that [was] interpret[ed]" "in the context of later events" and Plaintiffs do not simply allege that Defendants "should have anticipated future events and made certain disclosures earlier."  *Belmont Holdings*, 2010 WL 3545389, at \*6.  The exact opposite is true here:  Moore's statement supports that NV was aware in May and August that retention rates were dropping and recruiting initiatives were failing and, in response, NV took action by making significant wage investments while telling the market that the investments were merely "more of the same."  ¶119; ECF 55 at 8, 11-12.  Taking Plaintiffs' allegations as true and viewed in Plaintiffs' favor, the Court erred by finding Defendants' admissions did not support falsity.

**Third**, the Court erred by discounting the market's reaction to the three partial disclosures as supporting falsity.  *See* Order at 21-26.  Courts in this district often

rely on the stock decline and analysts' reaction following a disclosure to support a finding that the alleged statements were false and misleading or omitted material information. *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1371 (N.D. Ga. 2005) (disclosure's effect on stock price supports a finding of the falsity of defendants' statements); *In re Sci.-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1361 n.6 (N.D. Ga. 2002) ("analyst's comparison" supports a finding of falsity due to the materiality of defendants' discussion of issue at hand), *aff'd sub nom. Phillips v. Sci.-Atlanta*, 374 F.3d 1015 (11th Cir. 2004); ECF 55 at 18. Plaintiffs alleged significant stock drops following each disclosure (24%, 31%, and 39%) and surprise from analysts and the market. ¶¶139-141, 183-185, 227-230. For example, following the May 10, 2022 final disclosure, Jeffries stated that it was "gut-punched" by NV's stock downturn and reduced its price target by 38%. ¶183. On March 2, 2023, Morgan Stanley commented that "something doesn't look right" with respect to NV's 2022 earnings release and 2023 guidance. ¶229. These allegations indicate that investors did not fully comprehend the Company's labor pressures and exam capacity issues. When viewed in Plaintiffs' favor, they support the falsity of Defendants' Class Period statements.

**Fourth**, the Order erroneously distinguished this action from cases with similar fact patterns where motions to dismiss were denied, because Plaintiffs here did not plead former employee witnesses accounts. *See* Order at 28-29

(distinguishing *Phoenix Ins. Co., Ltd. v. ATI Physical Therapy, Inc*., 2023 WL 5748359 (N.D. Ill. Sept. 6, 2023) because the allegations in that case "were supported by several confidential witnesses"); *id.* at 29 (distinguishing *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc*., 564 F. Supp. 3d 1272, 1289 (N.D. Ga. 2012) and *Flowers*, 2018 WL 1558558, at *15-17 (because "allegations were supported by 14 confidential witnesses" and "allegations supported by testimony of former CFO"); *id.* at 36 ("Plaintiffs do not offer any witnesses to verify their claims"). But confidential witnesses are never required. ECF 55 at 29 n.25; *see, e.g.*, *Lemen v. Redwire Corp.*, 2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) (denying motion to dismiss complaint without confidential witnesses); *PainCare Holdings*, 541 F. Supp. 2d at 1294 (same). Indeed, had Plaintiffs pleaded former employee accounts, Defendants would have undoubtedly attacked them as unreliable. Nevertheless, the Complaint is based on "factual sources" and, as demonstrated by the many bullet points above, Plaintiffs provide the necessary specificity to demonstrate the reasons why Defendants' statements were false when made. ¶¶27-100. Nothing more is required, and it was error for the Court to discount the Complaint's allegations for not including "confidential witness" allegations. *See Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*, 333 F. Supp. 3d 1315, 1323 (N.D. Ga. 2018) (rejecting that scienter required "specific details of first-hand interactions with a defendant in which they advised him that existing facts contradicted his public

disclosures"); *In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *23 (S.D. Ohio Sept. 29, 2023) (finding, in scienter context, plaintiffs not required to plead confidential witnesses and reasoning "the recounting of conversations requires a degree of omniscience that is unrealistic at the preliminary stages of the litigation process.").

### B.  The Court Erred by Finding the Complaint Failed to Plead a Strong Inference of Scienter

The Court further committed legal error by failing to consider the totality of all relevant scienter inferences collectively and construing all reasonable aggregated inferences in Plaintiffs' favor.  ¶¶247-279; *Phillips*, 374 F.3d at 1018 n.6 (11th Cir. 2004).    Specifically,  the  Court  found  Plaintiffs  insufficiently  "allege[d] particularized facts demonstrating how the content" of the cited "metrics, reports, or calls  differed  materially  from  what  was  contemporaneously  disclosed  by  the Company."  Order at 43-44.

Scienter can be measured either through circumstantial allegations or motive-and-opportunity allegations. *Tellabs*, 551 U.S. at 325.  Like falsity, witness accounts are not required to allege scienter.  *See PainCare Holdings*, 541 F. Supp. 2d at 1293 (rejecting argument that lack of witnesses negates scienter); *Monroe*, 333 F. Supp. 3d at 1323; *Upstart Holdings*, 2023 WL 6379810, at *23.

Here, Plaintiffs alleged seven separate indicia of scienter, including: (i) the "critical" importance of hiring and retaining optometrists to the Company's overall

operations, financial performance, and outlook (¶¶248-252); (ii) Moore's and Fahs' substantial experience and control over NV's public statements based on their roles as CEO and CFO (¶¶253-258); (iii) 13 bullet points detailing the timing, names, and content of specific reports, meetings, and presentations reporting on optometrist retention and absences and stores, and meetings, like "Kick Off" and "Back to School" attended by Fahs, discussing retention issues (¶¶260-261); (iv) 14 instances of Defendants admitting they are actively monitoring and evaluating relevant data on vision care specialists, eye exam capacity constraints, recruitment, retention, and remote initiatives, and the Company's ability to meet demand and financial performance (¶¶259-261); (v) Defendants' admissions and post-Class Period disclosures that NV's challenges with optometrist availability and exam capacity occurred leading up to and during the Class Period (¶¶262-264); (vi) the timing of Defendants' statements and subsequent revelations of the truth; and (vii) Fahs' and Moore's suspiciously timed sale of over $34 million in NV stock (¶¶272-275).[6]

---

[6]  *See also*, *Mohawk*, 564 F. Supp. 3d at 1304 (defendant's role as executives, "active participation in press releases, earnings calls, and SEC filings dealing with the issues," and the "nature, duration and extent of the fraud alleged" indicated scienter); *Flowers*, 2018 WL 1558558, at *14 (scienter "bolstered" by allegations that fraudulent scheme was "core operation" of company); *Monroe Cnty. Emps.' Ret. Sys. v. Southern Co*, 2018 WL 1558577, at *28-29 (N.D. Ga. Mar. 29, 2018) ("management responsibilities," "access to the resources and information necessary and sufficient to make a determination concerning the Company's efforts," and "monthly . . . meetings" met scienter).

Specifically, Defendants regularly monitored staffing and retention metrics leading up to and throughout the Class Period, through: (i) "playbook" calls wherein each brand discussed doctor capacity and retention; (ii) weekly Monday conference calls with district managers to discuss sales numbers and plans for reopening; (iii) after reopening, monthly calls discussing staffing shortages and pay issues; (iv) the Professional Services Division's circulation of regular OD Retention Reports that included statistics related to optometrist employment levels in real-time, with information on stores with the highest and lowest retention rates; (v) in quarterly Lost OD Days report detailing "dark days" and shortage issues; (vi) in regional recruitment reports; and (vii) messages about staffing shortages in NV's "In Touch" system, which was routinely accessed by Fahs.  ¶¶65-70, 260.

The Order's failure to consider these indicia of scienter in the aggregate and in a light most favorable to Plaintiffs, further supports reconsideration.  *Mohawk*, 564 F. Supp. 3d at 1304-05 (finding scienter based on the "aggregated allegations" when "viewed in the light most favorable to Plaintiff" and "the reasonable inferences therefrom" were sufficient).

## V.    CONCLUSION

For the above reasons, the Court should grant this motion, reconsider its Order, and deny Defendants' motion to dismiss.

DATED:  April 29, 2024

ROBBINS GELLER RUDMAN
 & DOWD LLP

*/s/ Robert J. Robbins*

ROBERT J. ROBBINS
(admitted *pro hac vice*)
KATHLEEN B. DOUGLAS
(admitted *pro hac vice*)
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
MASON G. ROTH
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
kdouglas@rgrdlaw.com
bheikkinen@rgrdlaw.com
mroth@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
Georgia Bar No. 262062
MARY ELLEN CONNER
Georgia Bar No. 195007
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com
maryellenc@johnsonfistel.com

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
(admitted *pro hac vice*)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Additional Counsel*

## **LOCAL RULE 7.1(D) CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

_s/ Robert J. Robbins_
Robert J. Robbins

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of April, 2024, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

/s/ Robert J. Robbins
ROBERT J. ROBBINS